RONSPIEZ v. CHAMBERS et al.

No. 33931.    Dec. 12, 1950.

*226 P. 2d 388.*

C. W. Clift, of Oklahoma City, and F. C. Swindell and Logan Stephenson, both of Tulsa, for plaintiff in error.

A. Francis Porta, of El Reno, for defendants in error.

O'NEAL, J. This is an appeal from a judgment of the district court of Canadian county in an action for damages by Leonard Ronspiez against L. A. Chambers and William Brown, a partnership, doing business as Brownie's Flying Service. The action grows out of alleged negligent operation of an airplane.

Defendants operated an airport near El Reno, Oklahoma. In connection therewith they operated a flying school and also rented or let airplanes for hire. On November 19, 1945, plaintiff, Leonard Ronspiez, leased or rented from defendants an airplane known as L-2-M Type. It was also known as a Taylorcraft. Plaintiff took off from the airfield and flew to or in the vicinity of Okarche, some 15 or 20 miles to the north of El Reno. As he returned to the airport, and while approaching the runway preparatory to landing, an airplane, in which defendant William Brown was instructing a student, collided with the airplane being operated by plaintiff causing it to fall to, the ground, and in the crash plaintiff was severely injured. Thereafter, on May 21, 1946, he commenced this action for damages.

In his amended petition plaintiff alleges that defendant William Brown operated his airplane in a negligent manner, in that he came in over the airfield without circling the field and negligently and with a reckless disregard to other flyers flew his plane into the plane being operated by plaintiff; that defendant Brown operated his airplane in violation of the rules and regulations of the Civil Aeronautics Authority, a copy of which was attached to the petition and made a part thereof; that defendant Brown violated said rules in that he failed to keep a proper lookout for others who might be rightfully on the field; that defendant Brown was negligent and violated said rule by flying into the pattern of the plane being operated by plaintiff; that except for the negligence of Brown the collision would not have happened; that the collision and injury of plaintiff was caused by the negligence of said defendant William Brown. The amended petition set forth in detail the injuries received by plaintiff, his pain and suffering and loss of earnings, and his impaired earning capacity, his disfig-

urement, etc., and his hospital and medical expenses, all to his alleged damage in the sum of $104,000 for which he prayed judgment.

Defendants filed their answer and first asserted that the allegations of the amended petition were insufficient to constitute a cause of action in favor of plaintiff and against defendants, and further, by general denial, except that they admitted that they were partners doing business as Brownie's Flying Service, and were engaged in the operation of an airfield and flying school, and that they were the owners of the L-2-M plane, they specifically denied that they were guilty of any negligence, and affirmatively alleged that the injuries, if any, received by plaintiff were the direct and proximate result of the negligence of plaintiff.

The issues were tried to a jury, resulting in a verdict and judgment for the defendants, and plaintiff appeals.

There are five assignments of alleged error. The first assignment is that the court erred in overruling the motion of plaintiff for a new trial. The second, fourth, and fifth assignments all go to alleged error in the admission of evidence on behalf of defendants, and in rejection of evidence tendered by plaintiff. The third assignment is that said judgment is against the preponderance of evidence presented by the plaintiff in error.

In a law action, where there is conflict in the evidence, the question of preponderance of the evidence is for the jury, and the jury considers the evidence as a whole, that of defendant as well as that of plaintiff.

The only grounds set forth in the motion for new trial were:

"Error in the assessment of the amount of recovery in that the same was too small, and

"Error of law occurring at the trial and excepted to by the plaintiff."

Plaintiff in his brief first contends that under the pleadings and evidence the relationship of inviter and invitee existed, and that the court erred in failing to instruct the jury on the law of negligence as pertains to inviter and invitee in that it is the duty of the inviter to exercise ordinary care to keep the premises ordinarily used by customers in transacting business in as reasonably safe condition for use by the persons entering, and must warn them of dangerous conditions upon the premises which are known to him, or which reasonably should be known to him but not known to them.

In this connection plaintiff asserts that the presence on and over the airfield of defendant Brown in operating his airplane in instructing his student was such a hazard, and that it became the duty of defendant to advise plaintiff before plaintiff took off from the field that the defendants were instructing the student, who it appears was a negro when enlisted in the army, that the negro boy and his instructor would be flying within the pattern, and that this would be a danger of which plaintiff should have been warned, but was not.

There was no request for instruction going to that question but plaintiff asserts that it was the duty of the trial court, on its own motion, to instruct the jury as to the duty of an inviter to warn the invitee of dangers known to him, or which reasonably should be known to him, but not known to the invitee.

The difficulty with plaintiff's contention is that he did not plead as negligence of defendants the alleged danger relied upon and failure of defendants to warn the plaintiff thereof. Furthermore, plaintiff wholly failed to prove that he did not know that defendants were or would be using their airplane over the field in instructing their student. Plaintiff's own evidence clearly shows that he well knew that defendant Brown was using or would be using the plane over the field in instructing his student. He was familiar with the field and the manner in which it was operated. He testified that he had been

renting planes from defendants for some four months, or more. He testified that when he went to get the plane Brown was making or "shooting" landings on the field; that he took off from the field about the same time plaintiff took off and that plaintiff took off first and Brown went off immediately after him. He testified that he knew the student was taking flying lessons, and that Brown was instructing him. He then testified:

"Q. Now, you got in this Taylorcraft? A. Yes, sir. Q. Brownie had propped it for you to crank? A. Yes, sir. Q. And then he went over and he and his student got in his Taylorcraft; is that right? A. Yes, sir. Q. And you went down and pulled off? A. Yes, sir, because he motioned for me to go on ahead of him. Q. All right. Now, as far as you know, those two planes were the only ones that were operating at that time, weren't they? A. The best that I remember."

This testimony clearly shows that plaintiff knew as well as defendants all about the alleged "hidden" danger.

It is next contended that the court erred in admitting certain testimony of witness Harold Heuser. Heuser was an airplane pilot of long experience and was called as an expert witness. There was evidence to the effect that when the two airplanes came in contact in the air a strip of fabric about eight inches in width was torn or pulled from the left wing of the airplane which plaintiff was operating. The witness was asked what effect that would have upon the operation of the plane and whether it would cause a considerable amount of loss of lift in wings. His answer was to the effect that it would cause a loss of lift on the wing from which the fabric was torn. He was then asked:

"Now, Mr. Heuser, what would you do to overcome the loss of your lift? His answer was: Well, you would have to use the proper application of your controls which would be to use your rudder and aileron to overcome the loss of lift. He was then asked: What rudder would you give it, the right or left? His answer was: If it was torn off the left wing, I would use the right rudder."

We see no error in the admission of that testimony. The witness was testifying as to what he, as an expert, would do in the circumstances. That was no more nor less than testifying as an expert what would be the proper thing to do.

It is also contended that the court erred in admitting certain testimony of defendant William Brown. Careful examination of the record will disclose no error in the admission of the testimony of said witness.

In this case it seems to have been stipulated or agreed that certain rules and regulations of the Civil Aeronautics Authority were applicable to the operation of airplanes in the airfield of defendants. Among these rules were the following:

" '60.100. Authority of Pilot. The pilot in command of an aircraft shall be directly responsible for its safe operation' "

"No. 2: 'No person shall operate an aircraft in a careless or reckless manner, so as to endanger the life or property of another.

" '(3) Overtaking. An overtaken aircraft has the right-of-way, and the overtaking aircraft, whether climbing, descending, or in level flight, shall alter its course to the right.

" '(4) Landing. Aircraft, while landing or maneuvering for a landing, have the right-of-way over other aircraft in flight or on the surface.

" '(d) Proximity. Aircraft shall be flown at least 500 feet apart, except by a pre-arrangement of the pilots in command of the aircraft.

" '(60.106.) Operation on and in the vicinity of airports. Aircraft shall be operated on and in the vicinity of airports in accordance with the following rules:

" '(a) Prior to and during taxiing, taking off, and landing, a pilot shall:

" '(1) Observe other traffic and take precaution to avoid collision.

" '(2) Conform to the flow of traffic, and,

" '(b) After taking off or when approaching for landing, all turns shall be made to the left unless a different procedure has been authorized by the Administrator for the particular airport, or unless otherwise instructed by a control tower.' "

It is the contention of plaintiff that defendant William Brown was guilty of negligence in that he violated one or more of said rules, and particularly Rule 60-100, Rule No. 2, Rule No. 3, Rule No. 4, and Rule No. 4(d), or at least some one of them. It is the contention of defendants that plaintiff was guilty of negligence in that he violated one or more of said rules, and that plaintiff's own negligence was the sole cause of or contributed to the collision and plaintiff's injuries. On these questions there was direct conflict in the evidence. The testimony of plaintiff and his witnesses tend to prove that defendant Brown violated one or more of said rules and particularly Rules Nos. 3 and 4 in that Brown in approaching the runway for a landing flew from behind and over the airplane being operated by plaintiff and overtook and struck the same, and that Brown's plane, being the overtaking plane, failed to alter his course to the right and thereby failed to yield to the plaintiff the right of way.

The testimony of defendant Brown and defendants' witnesses tended to prove that while Brown was approaching the runway from the north preparatory to landing, the plane being operated by plaintiff came into the pattern directly from the north and behind Brown and flew his plane under, or below, defendant's plane and in so doing struck defendant's plane, causing the crash.

There was ample evidence, which if believed by the jury, from which the jury could have found the defendant Brown negligent and that his negligence was the cause of the collision. On the other hand, there was also evidence, which if believed by the jury, they might have found the plaintiff himself guilty of negligence, and the question of whether such negligence, if found, contributed to plaintiff's injuries was a question solely for the jury.

Examination of the record will disclose that the case was well tried and the issues were submitted to the jury under fair instructions, none of which was excepted to, and the findings of the jury on conflicting evidence as to the facts involved are binding upon the court.

There was no error in denying the plaintiff's motion for a new trial.

Affirmed.

DAVISON, C.J., and CORN, GIBSON, LUTTRELL, and JOHNSON, JJ., concur.