Geneva WOOTEN, Guardian ad litem of Defendant Valerie Wooten, and her mother and next friend; and Valerie Wooten, Plaintiffs in Error,

v.

J. E. HALL, Defendant in Error.

No. 41942.

Supreme Court of Oklahoma.

June 11, 1968.

Ben L. Burdick, Andrew M. Coats, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiffs in error.

Kenneth B. Kienzle, Jr., Kienzle & Kienzle, Shawnee, for defendant in error.

McINERNEY, Justice.

This litigation was occasioned by an intersectional collision. The appeal presents for decision the correctness of an instruction which sets forth in statutory language the right-of-way rule prescribed by the last sentence of 47 O.S.1961 § 11–403(d) for a driver facing a (flashing yellow) caution light at the approach to an intersection and a motorist who has already entered that intersection from another street after stopping at a stop sign as required by 47 O.S. 1961 § 11–703(d).

Proceeding northward, plaintiff reached a stop intersection. He stopped and proceeded across, entering the intersection in advance of the defendant. Defendant, then approaching that intersection from the west, faced a caution light of the type defined in 47 O.S.1961 § 11–204(a) 2. She was admittedly exceeding the speed limit. The cars collided in the intersection. Judgment was rendered on a jury verdict for the plaintiff.

The question presented necessitates an examination of two instructions. The first one sets forth the provisions of 47 O.S. 1961 § 11–403(b). It charges that a driver facing an intersectional stop sign must stop and yield the right of way "to any vehicle which has entered the intersection from another highway or which is approaching so closely * * * as to constitute an immediate hazard," but after so yielding, he may proceed into the intersection. The second one embodies the language of 47 O.S.1961 § 11–403(d), so far as pertinent to the facts here. It states that 1) when two vehicles reach an intersection simultaneously, and one of them is required to stop and the other to take caution, the one taking

caution has the right of way; and 2) *"In any event, a vehicle which has already entered the intersection shall have the right-of-way over one which has not so entered the intersection."*

The italicized portion of the second instruction, whose language is identical to that found in the concluding sentence of Sec. 11–403(d), is challenged here as so inconsistent with the terms of the first instruction as to confuse and mislead the jury. We are urged that since in this case defendant admitted plaintiff entered the intersection before she reached it, the italicized portion of the second instruction was tantamount to a directed verdict against her, inasmuch as by its language plaintiff was entirely relieved of his duty to yield which stands imposed on him (after stopping) by Sec. 11–403(b) and was set forth in the first instruction.

Sec. 11–403 was adopted in 1961 as a part of the Highway Safety Code. S.L.1961, pgs. 315, 379. Its subdivisions (a), (b) and (c) substantially follow the terms of Sec. 11–403 of the Uniform Vehicle Code prepared by the National Committee on Uniform Traffic Laws and Ordinances. See Uniform Vehicle Code, revised ed., 1962, pgs. 118, 119. Subdivision (d) was added in the committee hearings. Its source is obscure. The available legislative materials shed no light on its history.

■ Subdivision (d) consists of five sentences. The first four of these prescribe separate right-of-way rules to govern different factual situations in which vehicles facing various types of traffic signs or signals *approach controlled intersections so as to enter them at the same time.* The last sentence commences with the words "[i]n any event * * *". That sentence is plainly intended to govern the very same situations as those set forth in the first four sentences, but applies only when *one of the affected vehicles has already entered the intersection.* When the concluding sentence is viewed in this context, it is readily

apparent that the phrase "[i]n any event * * *" means "in any event (or situation) described by the preceding portions of the subdivision". We so hold. An inept or incorrect choice of words will not be construed or applied in such manner as to destroy the real and obvious purpose of a legislative enactment. Board of Ed. of City of Okmulgee v. State Board of Ed., 201 Okl. 32, 200 P.2d 394, 397.

■ So far as applicable here, subdiv. (d) provides in substance that when one vehicle's access to an intersection is controlled by a stop sign and the other's by a caution light, and both reach the intersection at the same time, the one required to take caution has the right of way, but " * * * a vehicle which has already entered the intersection shall have the right-of-way over one which has not so entered * * *". The quoted portion, which refers to a vehicle's prior entry, obviously contemplates a regular, lawful entrance into a controlled intersection, i. e. one made in compliance with the requirements of the law. Any other construction would lead to an absurdity. It would permit a vehicle which ran a stop sign, or failed to yield as required by subdiv. (b), to pre-empt the right of way by its mere physical entry into the intersection ahead of any other vehicle.

■ A statutory construction which would lead to an absurdity will be avoided if this can be done without violating the evident legislative intent. Talley v. Harris, 199 Okl. 47, 182 P.2d 765, 769.

The trial judge correctly construed the last sentence of subdiv. (d) in conjunction with the provisions of subdiv. (b). He specifically instructed on the requirements of a lawful entrance into a stop intersection, using substantially the language of subdiv. (b). In separate instructions he also informed the jury that both drivers were under a duty to exercise "every reasonable precaution, commensurate with apparent dangers incident to crossing an intersection burdened with traffic"; to use due care in

the management of their vehicles; and to keep a lookout ahead, consistent with the safety of other vehicles. Moreover, he admonished the jury not to single out any one instruction to the exclusion of the others, but to consider all of them as a whole.

 Considering the instructions so given as a whole and in the light of the facts adduced, we are unable to conclude that the objectionable phrase, "In any event * * *", which appears in the last sentence of the second instruction, could have misled the jury or induced their belief that plaintiff's mere physical presence in the stop intersection in advance of the defendant gave him "in any event" an absolute privilege of the immediate use of the roadway.

By so concluding we do not intimate that the phrase complained of merits our approval or that it is free from criticism. The trial court should have omitted it and instead, charged the jury that a vehicle which has lawfully entered the intersection in compliance with the rules of the road set forth in the first instruction, acquires a right of way over a vehicle which has not so entered that intersection. What we do hold here is that the choice of words does not afford here a basis for reversal.

Although a single instruction, standing alone, may be subject to criticism, no reversible error is shown if the instructions construed in their entirety fairly submit the issues to the jury. Moody v. Childers, Okl., 344 P.2d 262; Midland Val. R. Co. v. Lowery, 207 Okl. 227, 248 P.2d 1042; Johnson v. Short, 204 Okl. 656, 232 P.2d 944, 948; Newell v. Musgrove, 129 Okl. 207, 264 P. 156, 158. The rigidity of the ancient common law has been relaxed by adoption of the harmless-error doctrine. 12 O.S.1961 § 78. No case may be reversed on the ground of misdirection of the jury unless it affirmatively appears from an examination of the entire record that the objecting party has been prejudiced thereby or has been deprived of some substantial right.

Affirmed.

JACKSON, C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY, HODGES, and LAVENDER, JJ., concur.